# IN THE COURT OF APPEALS OF IOWA

No. 22-1451
Filed January 11, 2023

**IN THE INTEREST OF E.N.,**
    **Minor Child,**

**P.A., Mother,**
    Appellant.

_____

    Appeal from the Iowa District Court for Polk County, Brent Pattison, District Associate Judge.

    A mother appeals the termination of her parental rights. **AFFIRMED.**

    Alexandra M. Nelissen of Advocate Law, PLCC, Clive, for appellant mother.

    Brenna Bird, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

    Kayla A.J. Stratton, Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor child.

    Considered by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**SCHUMACHER, Judge.**

A mother appeals the termination of her parental rights, claiming the State did not establish a ground for termination. She also claims termination is not in the child's best interest and that the court should have applied an exception to preclude termination. Following our de novo review, we affirm.

## I.     Background Facts & Proceedings

The mother has a previous history with the Iowa Department of Human Services (DHS) concerning four biological children stemming back to 2016.[1]  Her parental rights to two of those children were terminated in February 2018, and her rights to the other two were terminated in March 2019.  The concerns in those cases were predominantly substance abuse and unstable housing.

The instant case began in November 2019 after E.N.'s birth.[2]  The mother tested positive for THC and admitted to cocaine use prior to learning she was pregnant.  E.N. experienced withdrawal symptoms after birth.   DHS removed the child from the mother's custody on November 15, 2019, and placed the child with a foster family.   E.N. was adjudicated a child-in-need-of-assistance (CINA) pursuant to Iowa Code section 232.2(6)(c)(2) and (n) (2020).

DHS's concerns with the mother in this case have focused on substance abuse.  The mother began treatment in July 2019 and claimed to have achieved sobriety by September.  As a result of her apparent success with treatment, the

---

[1] The department is now known as the Iowa Department of Health and Human Services, but because it functioned as DHS for the vast majority of this case, we refer to it by its former name in this opinion.

[2] E.N.'s biological father is unknown.  The mother's boyfriend was involved in these proceedings as he would be a potential caretaker of the child if E.N. was returned to the mother's custody.

child was returned to the mother in March 2020.[3]  Difficulties followed.  The mother's boyfriend tested positive for THC and cocaine in July, resulting in him moving out of the home in accordance with a safety plan.  And the mother's success with sobriety was short lived.  She tested positive for marijuana in September 2020 and admitted to her substance-abuse treatment provider that she used un-prescribed Vicodin.  Then, in October, the mother tested positive for methamphetamine.  That same month, E.N.. who was not yet one-year old, tested positive for cocaine, methamphetamines, and amphetamines.[4]  E.N. was again removed from parental custody and placed with another foster placement.

Following E.N.'s second removal, the mother achieved another period of sobriety.  As a result, E.N. was placed with the mother on a trial home placement in May 2022.  Again, the mother's success was short lived.  The mother and her boyfriend both tested positive for cocaine.  So, after just three weeks with her mother, E.N. was placed back with her foster family.  E.N. remained in this placement for the rest of the proceedings.

The State filed a petition to terminate the mother's parental rights in October 2021.  But due to a combination of the mother obtaining new counsel and hopes that she was making enough progress to regain custody of E.N., the proceedings were continued.  The termination hearing was held June 30, 2022.  During the hearing, the mother insisted that every positive drug test by herself, her boyfriend, and E.N. were false positives.  She claimed to have been sober since September

---

[3] While returned in March, the dispositional order was formally modified on May 28, 2020, to reflect that custody of E.N. was returned to her mother.
[4] THC was also present, but not in sufficient quantities to be confirmed.

2019. The DHS caseworker pointed to that belief as a primary reason for supporting termination. The caseworker testified that a refusal to acknowledge drug use impedes recovery. It was also recognized at trial that the mother had made some progress from her prior cases, particularly in obtaining stable housing and employment. Additionally, while E.N. shared some bond with her mother, she also shared a bond with her current foster placement and another concurrent plan family. Results from a drug test taken five days after the termination hearing showed the mother was positive for cocaine.[5]

The court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(g) and (h) (2021). The mother appeals.

## II. Standard of Review

We review the termination of parental rights de novo. *In re P.L*, 778 N.W.2d 33, 40 (Iowa 2010). We analyze the case using a three-step process. *Id.* at 39. First, we examine whether a ground for termination exists under section 232.116(1). *Id.* Second, we consider whether termination is in the best interest of the child. *Id.*; *see also* Iowa Code § 232.116(2). Finally, we must decide whether to apply an exception found in section 232.116(3) to prevent termination. In these cases, "the first and governing consideration of the courts is the best interests of the child." Iowa R. App. P. 6.904(3)(o).

## III. Grounds for Termination

The mother claims the State failed to establish a ground for termination. "On appeal, we may affirm the juvenile court's termination order on any ground

---

[5] By agreement of the parties, the record was left open to admit the results of this test.

that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We elect to focus on section 232.116(1)(h).[6]

The only element the mother disputes is whether the child can be safely returned at the present time. *See D.W.*, 791 N.W.2d at 707 (interpreting "at the present time" to mean "at the time of the termination hearing"). The mother contends that while she may have been using illegal substances while the child was in her home, she was still adequately caring for E.N.

We disagree with the mother. The mother has never acknowledged her drug use during these proceedings.[7] As the DHS caseworker testified to, a refusal to acknowledge drug use can impede treatment and leave the issue unresolved. A failure to treat drug addiction places the child at risk. *See In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (noting that a parent's unacknowledged, unresolved drug use prevented the children from having a safe and stable home). That risk is particularly evident due to E.N.'s drug test in which she tested positive for a

---

[6] That section is met when the court finds:
      (1) The child is three years of age or younger.
      (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
      (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
      (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

[7] The mother claims all the drug positive tests in this case were false positives. We, like the district court, disagree. While false positives are certainly possible, the number of positive drug tests and the correlation between the mother, her boyfriend, and E.N.'s results all suggest the validity of the testing.

panoply of substances. Moreover, drug use can hinder a parent's ability to properly supervise and care for a child, particularly when they are young. *Id.*

The mother's sobriety has been an issue for years—her prior CINA cases began in 2016. And despite occasional gleams of sobriety, the mother demonstrated throughout this case that her successes are short-lived.[8] *Id.* at 778 (explaining that we can gain insight into future parenting based on evidence of the parent's past performance). She tested positive for cocaine mere days after the termination hearing. Because of the mother's ongoing drug use, E.N. could not safely be returned at the present time. Clear and convincing evidence supports the ground for termination.

## IV. Best Interest of Child

We turn to whether termination is in the child's best interest. "In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

The mother claims her close bond between herself, her family, and the child indicates termination is not in E.N.'s best interest. She also claims "the child will naturally age and progress in therapy," which will prove beneficial to the child. Further, the mother points to her cooperation with services.

We find termination is in the best interest of E.N. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for

---

[8] The mother's boyfriend has presented similar issues with maintaining sobriety, having relapsed in the summer of 2021 and again in the spring of 2022.

termination under section 232.116(1) by hoping someday a parent will learn to be a parent." *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (citation omitted). Neither can a child remain with a parent who achieves sobriety only to relapse over and over again. *See A.B.,* 815 N.W.2d at 777 ("Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable." (citation omitted)). And, contrary to the mother's assertion, we will not make a child stay in unstable or dangerous conditions in the hope that therapy will address concerns in the future. E.N. has waited two-and-a-half years for the mother to achieve sobriety. She needs and deserves permanency.

## V.    Permissive Exceptions

The mother asserts the court should have prevented termination by applying two exceptions found in section 232.116(3). First, she claims "[e]vidence was clear that the child was placed with and in the custody of the mother throughout this case." *See* Iowa Code § 232.116(3)(a). Second, she contends the close bond she shares with the child is sufficient to preclude termination. *See id.* § 232.116(3)(c).

The mother has not preserved her claim in relation to subsection (a). "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Neither occurred in this case. In any event, this exception does not apply. The child was in the custody of DHS at the time of the termination hearing. She was not in the custody of her mother.

The mother-child bond similarly does not preclude termination. While there appears to be some bond between the mother and E.N., testimony indicated the child was similarly bonded to other adult figures, including her foster placement and the potential concurrent plan family. Regardless, the mother must present "clear and convincing evidence that the termination would be detrimental to the child" due to their bond. Iowa Code § 232.116(3)(c). She has not done so. As explained above, the mother's ongoing substance-abuse issues and the child's need for permanency outweigh any bond they may share and the record is void of evidence that termination will be detrimental to the child.

**AFFIRMED.**